UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**    :

 v.

              **Case No. 2:23-cr-04**
              **Judge Sarah D. Morrison**

**JAYLAN MILES RA SHAWN
GORE,**           :

    **Defendant.**

## OPINION AND ORDER

  This matter is before the court on Defendant Jaylan Gore's motion to dismiss a federal indictment charging him with receipt of a firearm by a person under felony indictment in violation of 18 U.S.C. § 922(n) and possession of a stolen firearm in violation of § 922(j). (ECF No. 23.) Defendant argues that both provisions are facially unconstitutional under the Second Amendment. The motion is fully briefed and ripe for consideration.

  For the reasons set forth below, Defendant's motion is **DENIED.**

### I. BACKGROUND

  The following draws from allegations in the Criminal Complaint (ECF No. 1) and the Indictment (ECF No. 21) which are taken as true on a motion to dismiss the indictment. *See United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007) (citing *United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir.1996) (*en banc*)).

On April 6, 2022, a state court indictment charged Mr. Gore with Carrying a Concealed Weapon, which is a fourth-degree felony in Ohio. (Criminal Compl., ¶ 2; Franklin County Court of Common Pleas Case No. 20-cr-1360.) Mr. Gore remained under felony indictment for that offense until he entered a guilty plea on August 24, 2022. (*Id.*) Pursuant to § 922(n), Mr. Gore was prohibited from receiving any firearm that had been shipped or transported in interstate commerce for the duration of his felony indictment.

In an interview with law enforcement, Mr. Gore acknowledged that on or around August 17, 2022, he handled a Glock 22, .40 caliber pistol (SN: BAVZ760), which had been transported in interstate commerce. (¶¶ 19, 20.) As a result, Mr. Gore was charged with one count of receiving a firearm while under felony indictment in violation of § 922(n) (Count Two). Because the firearm had been stolen from Vance Outdoors in Obetz, Ohio on August 14, 2022, (¶ 3), Mr. Gore was also charged with one count of possessing a stolen firearm in violation of § 922(j) (Count One).

Defendant now moves to dismiss both counts of the indictment.

## II. STANDARD OF REVIEW

Rule 12 of the Federal Rule of Criminal Procedure states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant may seek dismissal of a defective indictment pursuant to Rule 12(b)(3)(B). The Court can

2

rule on a motion to dismiss before trial "if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997).

## III. DISCUSSION

Mr. Gore's sole argument for dismissing the indictment is that §§ 922(j) and (n) are facially unconstitutional under the Second Amendment. (Mot., PAGEID # 31.) "A facial challenge seeks to secure a declaration that a statute is utterly inoperative." *United States v. Frost*, 125 F.3d 346, 370 (6th Cir. 1997). To succeed on his facial challenge, Mr. Gore must establish that "no set of circumstances exist under which the [provisions] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The fact that either provision "might operate unconstitutionally under some conceivable set of circumstances," or as applied to the particular facts of this case, "is insufficient to render it wholly invalid." *Id.*; *see also Phelps-Roper v. Strickland*, 539 F.3d 356, 361 (6th Cir. 2008) (noting that facial challenges are disfavored because "they raise the risk of premature interpretation of statutes on the basis of factually barebones records.").

### A. The *Bruen* Framework

The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

3

To determine whether a regulation is valid under the Second Amendment, the Court first determines whether the plain text of the Second Amendment covers the regulated conduct. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. -- ----, 142 S. Ct. 2111, 2126, 2129–30 (2022). If the text covers the conduct, then the regulation is presumptively invalid and the burden shifts to the Government to justify the regulation by demonstrating that it is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. The second step of the Court's inquiry "requires only that the Government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at ----, 142 S. Ct. at 2133 (emphasis in original).

**B.     Section 922(n) is facially valid under the Second Amendment.**

Section 922(n) prohibits individuals under felony indictment from "ship[ing] or transport[ing] in interstate or foreign commerce any firearm or ammunition" and from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Defendant argues that § 922(n) is presumptively invalid because individuals under indictment are part of "the people" covered by the plain text of the Second Amendment and that the Government has failed to meet its burden in justifying the regulation. (Reply, PAGEID # 85, 88.) In response, the Government argues that

4

individuals under felony indictment are not covered by the text of the Second Amendment which encompasses only "ordinary, law-abiding citizens." (Resp., PAGEID # 64.) Alternatively, the Government argues that § 922(n) is consistent with surety laws and other historical regulations on firearms. (*Id.* at 69.)

### 1. The plain text of the Second Amendment covers the conduct regulated by § 922(n).

The words "the people" in the Second Amendment and throughout the Constitution "unambiguously refers to all members of the political community, not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008). "[T]he people" is a term of art that refers to "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* Therefore, exclusion of individuals under indictment from the "right of the people to keep and bear arms" is inconsistent with the Amendment's plain text. *See United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *2–3 (M.D. Tenn. Nov. 16, 2022) (felony indictees are covered by plain text of Second Amendment); *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037 (S.D.N.Y. Jan. 26, 2023) (same); *United States v. Kays*, No. CR-22-40-D, --- F.Supp.3d ----, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) (same); *United States v. Quiroz*, No. PE:22-CR-00104-DC, --- F.Supp.3d ----, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) (same); *United States v. Holden*, No. 3:22-CR-30 RLM-MGG, --- F.Supp.3d ----, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022) (same); *United States v. Hicks*, No. W:21-CR-00060-ADA, --- F.Supp.3d ----,

2023 WL 164170 (W.D. Tex. Jan. 9, 2023) (same); *but see United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, --- F.Supp.3d ----, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022), *review denied*, No. 22-CR-1581-GPC, 2022 WL 17477918 (S.D. Cal. Dec. 6, 2022) (felony indictees are not covered by plain text of Second Amendment).

Next, to "bear arms" means to "wear, bear, or carry. . . upon the person or in the clothing or in a pocket, for the purpose. . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, at 584 (quotations and citations omitted). Section 922(n)'s prohibition on receiving firearms necessarily includes taking possession of a firearm. *See Receive,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/receive (last visited on 10 Feb. 2023) ("[T]o come into possession of."); *Receive,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("To come into possession of or get from some outside source.").

Thus, § 922(n) is a regulation on conduct covered by the plain text of the Second Amendment. Accordingly, it is presumptively invalid and the burden shifts to the Government to justify the regulation through identification of a sufficient historical analogue.

> **2. Section 922(n) is justified by this Nation's historical tradition of firearm regulation.**

Section 922(n) burdens the ability to keep and carry firearms for a limited group of people: individuals under felony indictments. As such, it is limited to circumstances where either a grand jury or judicial officer has made a probable cause finding that the individual committed a felony offense. The regulation is also

6

limited in duration: it takes effect when the indictment is issued and terminates when the indictment is resolved by dismissal, acquittal, or conviction. Section 922(n) is not a wholesale prohibition on the ability to keep and carry firearms; indicted individuals are prohibited only from obtaining new firearms or moving firearms already in their possession. In sum, § 922(n) imposes a temporary and limited burden on an individual's right to keep and carry firearms based "on an objective characteristic that is a fair proxy for dangerousness: an indictment for a felony punishable by a year or more in prison." *Rowson*, at \*22; *see also United States v. Laurent*, 861 F. Supp. 2d 71, 102 (E.D.N.Y. 2011) ("[I]f the individual only received a gun after indictment, this conduct raises the suspicion that his purpose is not self-defense in the home, but further crime.")

As understood in its historical context, the Second Amendment guarantees the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, at ----, 142 S. Ct. at 2122. (citations omitted); *see also United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012), *abrogated on other grounds by Bruen*, 597 U.S. ----, 142 S. Ct. 2111 (2022) ("Consistent with the historical understanding of the right to keep and bear arms, several courts, including the Supreme Court in *Heller*, have recognized that the right to keep and bear arms is for *lawful purposes*.") (emphasis in original) (citations omitted). This understanding is evidenced by historical laws that disarmed entire classes of people who, at the time, were viewed as dangerous or non-peaceable. *See United States v. Goins*, No.

7

522CR00091, --- F.Supp.3d ----, 2022 WL 17836677, at *10–12 (E.D. Ky. Dec. 21, 2022) (collecting authority on common law tradition of disarming dangerous individuals); *Rowson,* at 21–22 (collecting authority on laws disarming certain racial, religious, and political groups); *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (collecting authority on laws disarming felons and habitual drug users). While some of those laws would be unconstitutional and morally reprehensible if enacted today, they reflect a historical tradition of disarming citizens presumed to be dangerous or non-law abiding.

Within this tradition, surety laws provided an avenue for disarming potentially dangerous people on a more individualized basis. Surety laws presumed that citizens had a right to keep and carry firearms but required "certain individuals to post bond before carrying weapons in public." *Bruen,* at ----, 142 S. Ct. at 2148–49. For example, an 1836 Massachusetts law "required any person who was reasonably likely to breach the peace. . . to post a bond before publicly carrying a firearm." *Bruen*, at ----, 142 S. Ct. at 2148 (citing MASS. REV. STAT., ch. 134, § 16 (1836)). From 1838 to 1871, "nine other jurisdictions adopted variants of the Massachusetts law." *Id.*

In England, the payment of a surety bond was "intended merely for prevention, without any crime actually committed by the party, but arising only from a probable suspicion." 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND (1769). Similarly, surety laws in the United States did not require a

8

formal conviction; instead, a showing of "reasonable cause" by another citizen or "upon view" of a judge or justice of the peace was sufficient. *Rowson*, at *22–23 (citing 1801 TENN. LAWS 710, § 6 and 1821 ME. LAWS 285, ch. 76); *see also Bruen*, at ----, 142 S. Ct. at 2148 (citing MASS. REV. STAT., ch. 134, § 16 (1836) and WILLIAM RAWLE, A VIEW OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, 126 (2d ed. 1829)).

Like surety laws, § 922(n) presumes that all individuals have a right to keep and carry firearms but imposes a burden on that right for a limited time upon a finding by a judicial officer or other legal process that an individual has participated in dangerous, disruptive, or otherwise felonious conduct. However, unlike surety laws, § 922(n) does not disturb an individual's ability to keep or carry any firearms that they already own.

To be an appropriate analogue to § 922(n), a historical regulation must "impose a comparable burden on the right of armed self-defense" and that burden must be "comparably justified." *Bruen*, at ----, 142 S. Ct. at 2132. Because it imposes a comparable burden and has a comparable justification to historical surety laws, § 922(n) is facially valid under the Second Amendment.

### C. Section 922(j) is facially valid under the Second Amendment.

Defendant next argues that § 922(j) is facially invalid under the Second Amendment. It is not. Even if the plain text of the Second Amendment covered a person's ability to keep and carry stolen firearms, the Government has identified

9

numerous historical laws that prohibited the purchase or receipt of stolen goods, chattel, and other effects[1]; there is no indication that firearms were exempt from such laws. Moreover, as understood in its historical context, the Second Amendment guarantees "the right to keep and bear arms [for] *lawful purposes*," *Greeno*, at 520 (emphasis in original) (citations omitted), and this Court can think of no lawful purpose for which a private citizen would knowingly possess a stolen firearm.

Accordingly, § 922(j) is also facially valid under the Second Amendment.

## IV. CONCLUSION

Defendant's Motion to Dismiss the Indictment is **DENIED**. (ECF No. 23.)

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

---

[1] Resp., at PAGEID # 74 (citing ACTS AND LAWS OF HIS MAJESTY'S PROVINCE OF NEW-HAMPSHIRE: IN NEW ENGLAND, 39–40 (1771) (1714 law); 4 THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, at 273 (1820) (1730 law); 2 LAWS OF THE STATE OF NEW YORK PASSED AT THE SESSIONS OF THE LEGISLATURE HELD IN THE YEAR 1785, 1786, 1787 AND 1788, INCLUSIVE 668 (1788 law))); *see also* SALMON P. CHASE, STATUTES OF OHIO AND OF THE NORTHWESTERN TERRITORY, ADOPTED OR ENACTED FROM 1788 TO 1833 INCLUSIVE: TOGETHER WITH THE ORDINANCE OF 1787; THE CONSTITUTIONS OF OHIO AND OF THE UNITED STATES, AND VARIOUS PUBLIC INSTRUMENTS AND ACTS OF CONGRESS, at 1727 § 26 (1830 law); OLIVER H. PRINCE, DIGEST OF THE LAWS OF THE STATE OF GEORGIA CONTAINING ALL STATUTES AND THE SUBSTANCE OF ALL RESOLUTIONS OF A GENERAL AND PUBLIC NATURE, at 201 § XXIX (1833 law).